IRENE V. HUTCHINS ARCAND, *Adm'x*

*v.*

GUTTERSON & GOULD, INC.

*Hughes & Burns* (*Mr. Walter A. Calderwood, Jr.*, orally), for the plaintiff.

*Alvin A. Lucier*, for the defendant.

ALLEN, C. J.  The question presented is a jurisdictional one between state and federal authority.  An act of Congress passed in 1927 (Mar. 4, 1927, *c.* 509; 44 U. S. Stat. 1424) and known as the Longshoremen's and Harbor Workers' Compensation Act provides compensation when an employee dies or is disabled as the result of injury "occurring upon the navigable waters of the United States . . . and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law," with certain exceptions not here of pertinence.

The federal Constitution extends federal judicial power to "all cases of admiralty and maritime jurisdiction" (U. S. Const., *Art.* III, *s.* 2).  The plaintiff concedes that by force of this grant of power Congress has paramount power to act upon the subject, but asserts that until Congress has acted a state's jurisdiction over navigable waters within its boundaries is reserved.  She bases on this premise the further assertion that the federal act, in excluding cases where a state act may validly apply, may not be invoked to defeat her claim under the state act.

Whatever may be the merit of the legal reasoning in the dissenting opinions in the cases of *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, and *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, the decisions in these cases are considered to hold the power of Congress in admiralty and maritime matters to be exclusive and to deny to the states any jurisdiction to fix and determine the rights and liabilities of persons engaged in maritime occupations on the country's navigable waters in respect to characteristic features of maritime law and when harmony and uniformity in the law are implicitly required.

As declared in the *Knickerbocker Ice Co.* case, *supra*, 160: "The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction.  Moreover, it took from the States all power, by legislation or judicial decision, to con-

travene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the Federal Government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere." This construction of the federal Constitution was approved in *Nogueira* v. *Railroad*, 281 U. S. 128, the court there saying (*p.* 135): "But seamen, including longshoremen engaged in loading or unloading, if injured on a vessel in navigable waters, could not constitutionally have the benefit of a state workmen's compensation act, even if an act of Congress so provided." There are cases holding that the states have jurisdiction of a maritime nature when the situation is so local as not to intrench upon the principle of uniformity, but this case is not in parallel with them. Loading a vessel with a cargo consigned to a foreign port is a characteristic feature of maritime commerce for which divergent rules of law are proscribed by the force of the federal Constitution as decisions of the federal courts have construed it.

It follows that the state act cannot validly apply here if the decedent was injured while engaged in maritime service on navigable waters of the country.

The point is taken that the decedent, although on a vessel when struck by the falling pulley, was injured by a force originating on the dock where the crane was stationed, and that hence admiralty jurisdiction fails. The cases cited to support this position have distinguishing features. If the service at the time of injury is not maritime in character, then the circumstance of presence on navigable waters is not enough to defeat state jurisdiction. If the rights and liabilities as fixed by state law have "no direct relation to navigation" and the local law in application "cannot materially affect any rules of the sea whose uniformity is essential," the local jurisdiction may extend to navigable waters. *Grant &c. Co.* v. *Rohde*, 257 U. S. 469, 473; *Millers' &c. Underwriters* v. *Braud*, 270 U. S. 59; *Alaska &c. Ass'n* v. *Commission*, 276 U. S. 467; *Sultan &c. Co.* v. *Department*, 277 U. S. 135. In the case last cited the court states the distinction in this language: " . . . where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local

rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity." The decedent's work here was of a standardized maritime character.

Nor is the claim that the injuring force was exerted against the decedent as though he were on land a sound one. He was struck by a falling pulley, and that was the accident. The cause of the break in the cable which led to the fall of the pulley may account for the fall, but it was the blow from the pulley that was the injuring force. Responsibility for the force is an issue not here a matter of inquiry. The place where the force is received, and not that of its source and development, determines the place of accident and injury. "The locality where the accident occurred is the decisive factor," *In re Wolf's Case*, 285 Mass. 181, a case in which the general subject is ably discussed and considered. The origin of the force, sometimes spoken of in the cases, refers to final, and not to antecedent, causes.

In *Smith* v. *Taylor*, 276 U. S. 179, (affirmed in *Minnie* v. *Company*, 295 U. S. 647) the employee while on a staging extending beyond the edge of a wharf was struck by a swinging sling used in loading a vessel, thrown into the water and drowned. While death occurred in a navigable water, "the blow by the sling was what gave rise to the cause of action," and it "was given and took effect while deceased was upon the land." The case is thus authority for the defendant instead of for the plaintiff. If a vessel sank at sea by reason of defects in its construction, it could hardly be claimed that it was not a maritime disaster because the vessel was constructed on land. It is where the accident occurs, and not how it was caused, that is the test of jurisdiction.

The further point that the decedent's contract of employment included no work of a maritime nature must also be rejected. If his work at the time of the accident was special and outside of his regular or permanent employment, yet it was work his employer directed him to do, and the contractual relation of master and servant subsisted in respect to it. Clearly his general service included work of a maritime character from time to time as might be required of him. To hold otherwise would be to deny the relation of master and servant at the time and thus defeat the plaintiff's claim of benefit under any compensation act. Change of jurisdiction is frequent. "The fact that the same employee of a railroad company may have different rights at different times is a familiar consequence of the application of different laws, as, for example, where the employee of a railroad company is engaged at one time in intrastate commerce

and at another time, even on the same day, in interstate commerce." *Nogueira* v. *Railroad*, 281 U. S. 128, 137. In further illustration, a longshoreman loading or unloading a cargo with a truck passing back and forth between dock and vessel shifts between state and federal jurisdiction as frequently as the truck shifts between dock and vessel.

The plaintiff's rights were under the federal act.

*Petition dismissed.*

All concurred.