**TRAVELERS INS. CO. et al. v. McMANIGAL, Deputy Com'r of United States Employees Compensation Commission et al.**

**No. 5161.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1944.

Leon T. Seawell, of Norfolk, Va., for appellants.

William C. Coupland and Russell T. Bradford, Asst. U.S. Atty., both of Norfolk, Va. (Sterling Hutcheson, U.S. Atty., of Norfolk, Va., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and WARING, District Judge.

SOPER, Circuit Judge.

Herman Geyer, an employee of Dry Dock Associates, lost his life while engaged as a carpenter in the construction of a drydock for the United States at the Norfolk Navy Yard in Virginia; and his widow and minor children were awarded compensation under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. This appeal by the employers and their insurance carrier challenges the jurisdiction of the Commission on the ground that the matter was wholly within the jurisdiction of the Industrial Accident Commission of Virginia.

The drydock was designed solely as an aid to navigation and was to be used exclusively for work on ships. It was 1100 feet long, 150 feet wide and 55 feet deep, and was made of concrete. On the day of the accident 84½ per cent of the concrete

had been poured and the structure was 62 per cent complete. The site was adjacent to the Elizabeth River. It had been first dredged from the bank of the river back into the Navy Yard. Originally it was filled with water which had been there from time immemorial. After the dredging was finished, the bottom of the excavation was prepared for the concrete floor which was poured under water. The construction of the side walls was then begun, and when the work had reached a certain point a cofferdam was erected at the river end of the dock and the water was pumped out to permit the completion of the structure. The dock was dry, the concrete floor had been very nearly finished and the concrete side walls had been partly installed when the accident occurred. The deceased at that time was engaged in unhooking concrete forms from a sling at a point 4 feet from the inner surface of the wall and 45 feet above the floor and was knocked off his support and sustained fatal injuries when he fell to the floor beneath.

Upon these facts the Deputy Commissioner made the award in question. No action has been taken in respect to the matter by the state authorities. The reasons advanced by the appellant against the award are: (1) that the accident did not occur upon navigable waters of the United States; (2) that the accident did not occur upon a drydock; (3) that the employment of the deceased at the time of the accident was not maritime; and (4) that the employment, whether maritime or not, was a matter of purely local concern.

Section 2(4) of the Act provides that "the term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any drydock)"; and Section 3(a) provides that "compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any drydock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

It is not disputed that it was competent for Congress to provide compensation for an employee injured while at work in a drydock, even though emptied of water, as an injury occurring upon navigable waters of the United States. But it is contended that since the structure in this case was not finished, it was not a drydock and that the carpenter's work upon it was not a maritime employment. An analogy is drawn with the historic distinction which the courts have made between work performed in the building of a ship which is not considered maritime and work upon a completed ship which partakes of this character. See Frankel v. Bethlehem-Fairfield Ship Yard, 4 Cir., 132 F.2d 634; United States Casualty Co. v. Taylor, 4 Cir., 64 F.2d 521.

Furthermore, it is said that even if it be held that in the eye of the law the accident happened on navigable waters in that it occurred in a drydock, and even if it be thought that the employment was maritime in quality, nevertheless the State Compensation Commission had exclusive jurisdiction of the complaint because the whole matter was one of purely local concern. In this connection the rule is invoked that was enunciated by the Supreme Court in Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008, and was summarized in Sutton Ry. & Timber Co. v. Dept. of Labor and Industries, 277 U.S. 135, 137, 48 S.Ct. 505, 506, 72 L.Ed. 820, as follows: "It is settled by our decisions that, where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations, and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity." See, also, Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Alaska Packers' Ass'n v. Industrial Accident Commission, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656; cf. Southern Pacific Co. v. Jensen, 240 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900; Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756; Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819; Employers' Liability Assurance Co. v. Cook, 281 U.S. 233, 50 S.Ct. 308, 74 L.Ed. 823.

It must be confessed that the courts, high and low, have not been notably successful in drawing a sharply defined line in the law of workmen's compensation between the area confided to the federal au-

thorities and that in which the state compensation commissions may properly operate. One dominant motive, however, is discernible in the confusion that beclouds the welter of decisions on the subject. The courts have sought to find a way to give to injured workmen and their families the security and redress which modern compensation statutes were designed to afford and have striven to protect these benefits from the jurisdictional uncertainties inherent in our dual system of government. Prior to 1927 when the present federal compensation law was enacted, the Supreme Court developed a theory that certain local activities, though maritime in character, might be given protection under compensation laws of the states, and such decisions as that in the Rohde case and others above cited were rendered. Thereby the Supreme Court qualified the rule previously announced in the Jensen case that the essential character of the general maritime law could not be modified by state laws of compensation. The same influence has been active since the enactment of the Longshoremen's and Harbor Workers' Compensation Act. The Supreme Court has expressed doubt as to the soundness of the Jensen decision and of decisions in Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145, and State of Washington v. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646, which invalidated the statutes whereby Congress attempted to place maritime injuries within the jurisdiction of the state commissions. In Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, reversing the decision of this court reported at 116 F.2d 789, it was held that a workman usually employed on land was covered by the federal act when drowned in the incidental employment of trying out a motor boat made for sale by his employers, and that the employment was not so local in character that the state could validly have included it under its Workmen's Compensation Act. In South Chicago Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, it was held that in providing compensation in the Longshoremen's Act, Congress exerted its constitutional power to modify the admiralty law and that the authority to determine whether an injured employee was a member of the crew of a vessel and therefore excepted from the protection of the Act by § 3 thereof was conferred by the statute on the Deputy Commissioner, and his finding, if sustained by the evidence was binding upon the courts.

■ These cases seem to manifest a trend to a more restrictive interpretation of the exceptions in the Longshoremen's act and an enlarged view of its scope; but in fact the underlying tendency of the recent decisions is to adopt the view that will protect the worker whether the proceeding is undertaken in the federal or state jurisdiction. In the recent case of Davis v. Dept. of Labor, 317 U.S. 249, 63 S.Ct. 225, the jurisdiction of the state commission was sustained in awarding compensation to a steel worker injured while he was afloat on a barge and engaged in dismantling a bridge over a navigable stream. The desirability of supporting the awards of compensation by administrative bodies, state or federal was emphasized in the following passages from the opinion (pages 256, 257, 258 of 317 U.S., page 229 of 63 S.Ct.) :

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act.

"Faced with this factual problem we must give great—indeed presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves. Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There, we are aided by the provision of the federal act, 33 U.S.C. § 920, 33 U.S.C.A. § 920, which provides that in proceedings under that act, jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary.' Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error. It was under these circumstances that we sustained the Commissioner's findings in Parker v. Motor Boat Sales, supra.

"In the instant case, we do not enjoy the benefit of federal administrative findings and must therefore look solely to state sources for guidance. We find here a

state statute which purports to cover these persons, and which indeed does cover them if the doubtful and difficult factual questions to which we have referred are decided on the side of the constitutional power of the state. The problem here is comparable to that in another field of constitutional law in which courts are called upon to determine whether particular state acts unduly burden interstate commerce. In making the factual judgment there, we have relied heavily on the presumption of constitutionality in favor of the state statute. South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 188, 191, 625, 58 S.Ct. 510, 515, 517, 82 L.Ed. 734. * * *

"Under all the circumstances of this case we will rely on the presumption of constitutionality in favor of this state enactment; for any contrary decision results in our holding the Washington act unconstitutional as applied to this petitioner. A conclusion of unconstitutionality of a state statute can not be rested on so hazardous a factual foundation here any more than in the other cases cited."

■ Approaching the question in the pending case in the light of these decisions, we are of opinion that the award of the Deputy Commissioner should be sustained. The deceased employee was engaged in a maritime employment at a place within the admiralty jurisdiction of the federal courts. It appears from the testimony that the site of the dock had always been covered with water until the cofferdam was built after the dredging operations had been completed and the concrete floor had been poured under water. During the last mentioned operation in an earlier period of the dock's construction, a workman was injured when he fell from the gangplank of a barge floating on 45 feet of water within the structure and we held that he was entitled to compensation under the federal statute. Travelers Ins. Co. v. Branham, 4 Cir., 136 F.2d 873. The temporary withdrawal of the water did not destroy the federal jurisdiction. It was so held in Butler v. Robins Dry Dock Co., 240 N.Y. 23, 147 N.E. 235, where an employee was injured in the course of his employment outside a vessel in a graven drydock from which the water had been withdrawn. The court held that in the eye of the law he was constructively standing in navigable waters at the time of his injury and therefore was not entitled to recover in an action in tort in the state court. In harmony with this holding it was held in

Maryland Casualty Co. v. Lawson, 5 Cir., 101 F.2d 732, that a worker injured while on the foundation part of a marine railway was entitled to compensation under the federal act.

It is not material that in the pending case the drydock was not finished. Not only was the locality within the maritime jurisdiction, but the work was maritime in its nature. We do not think that a distinction should be drawn in this respect between an unfinished and a finished structure in analogy to the distinction between a completed ship and one in the course of construction. More nearly analogous to the case at bar is the case of The Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 60 L.Ed. 937, in which the admiralty court took jurisdiction of a tort committed when a ship on the Delaware River collided with a beacon that was being erected for the United States as an aid to navigation. The court said (page 176 of 241 U.S., page 516 of 36 S.Ct.): "We think that a distinction based solely on the fact that the beacon was not fully completed would be a needless refinement,—a nicety in analysis not required by reason or precedent. We regard the location and purpose of the structure as controlling from the time the structure was begun. It was not being built on shore and awaiting the assumption of a maritime relation. It was in course of construction in navigable waters, that is, at a place where the jurisdiction of admiralty in cases of tort normally attached,—at least in all cases where the wrong was of a maritime character. * * * It is urged that the government might abandon its plan; but there has been no abandonment. The question is not as to an abandoned mass, but as to a beacon in course of erection. Even a completed beacon might be abandoned, and whatever question might arise in such a case is not presented here. Again, an analogy is suggested to the case of a vessel which is being constructed on shore, but the argument falls short, as it is to be remembered that as soon as a vessel is launched, although still incomplete, it is subject to the admiralty jurisdiction. Tucker v. Alexandroff, 183 U.S. 424, 438, 22 S.Ct. 195, 46 L.Ed. 264, 270. This is not the case of a structure which at any time was identified with the shore, but, from the beginning of construction, locality and design gave it a distinctly maritime relation."

This discussion disposes of the argument that the whole matter was one of local

concern within the jurisdiction of the State Commission and therefore excluded from the jurisdiction of the federal commission by the exception in § 3 of the Act. The limits of this doctrine are by no means clear; and the contrast between the approval of federal jurisdiction in Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, and the approval of state jurisdiction in Davis v. Dept. of Labor, 317 U.S. 249, 63 S.Ct. 225, does not tend to dispel the doubts which beset the courts and the interested parties in this field of the law. But if the conclusions we have reached in this case with respect to the locality of the injury and the nature of the employment of the deceased are valid, there is no room for the application of the rule announced in cases of the Rohde class.

The judgment of the District Court approving the award of the Deputy Commissioner and dismissing the petition of the appellants for an injunction to restrain the enforcement of the award is affirmed.