[No. 28464. Department Two. January 30, 1942.]

OPAL SAXTON DAVIS, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 121 P. (2d) 365.

*McMicken, Rupp & Schweppe,* for appellant.

*The Attorney General* and *Edward S. Franklin, Assistant,* for respondent.

BLAKE, J.—The plaintiff is the widow of Ancil Evan Davis, who was drowned in the Snohomish river while engaged in extrahazardous employment. Plaintiff filed her claim for pension under the industrial insurance act. The claim was rejected by the supervisor of industrial insurance. His rejection of the claim was sustained by the joint board of the department of labor and industries. On appeal to the superior court, judgment was entered approving the order of the joint board and dismissing the appeal. From that judgment, the appeal to this court is taken.

The facts out of which the claim arose are not in dispute. Briefly summarized from the court's findings, they are as follows: Manson Construction & Engineering Company, which was a contributor to the accident fund under the industrial insurance act, had a contract with the state highway department to build a portion of the concrete bridge which now spans the Snohomish river at Everett. The company also agreed

to dismantle the old drawbridge and stockpile the material therefrom on the river bank at a point about two hundred fifty feet from the bridge site. This work was commenced about the first of July, 1940. In carrying out the work, a tug, a derrick barge, and a barge were used. All three were licensed vessels. The derrick barge was towed to the drawrest of the bridge and there moored. The barge was towed alongside the derrick barge and tied to it. The steel of the bridge was cut with oxyacetylene torches into lengths for convenient handling and storing and then lowered by the derrick onto the barge.

Davis was employed by the company on July 2, 1940, as a structural steel worker. On July 8th, the day he met his death, he was working on the barge onto which the steel was being lowered, his duties being to decide where the steel should be placed and to burn off any short stubs of iron that might interfere with its being properly piled. About nine-thirty in the morning, he discussed with the foreman the best location, on the barge to place a five ton beam that was about to be lowered. He was standing on or near the bull rail of the barge at the time. That was the last seen of him. About one-thirty of the same afternoon, his body was recovered about a quarter of a mile downstream.

Appellant's claim for pension was rejected on the ground that Davis was, at the time of his accident, engaged in the performance of a maritime service upon navigable waters, the theory being that the state has no jurisdiction over such accidents, and that they are not within the purview of the industrial insurance act. *State v. Dawson & Co.*, 122 Wash. 572, 211 Pac. 724, 212 Pac. 1059, 31 A. L. R. 512, affirmed, 264 U. S. 219, 68 L. Ed. 646, 44 S. Ct. 302. That he was so engaged is hardly debatable. Notwithstanding, appellant con-

tends that, at the time of his death, her husband was engaged in an operation of purely local concern—the dismantling of a bridge pursuant to the terms of a contract between the state of Washington and his employer, Manson Construction & Engineering Company.

The supreme court of the United States has held in several cases that benefits under state compensation acts may be claimed for accidents occurring on the navigable waters of the United States when they happen in the course of a purely local operation unconnected with commerce and navigation. *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 66 L. Ed. 321, 42 S. Ct. 157; *Millers' Underwriters v. Braud,* 270 U. S. 59, 70 L. Ed. 470, 46 S. Ct. 194; *State Industrial Board v. Terry & Tench Co.,* 273 U. S. 639, 71 L. Ed. 817, 47 S. Ct. 90; *Alaska Packers Ass'n v. Industrial Accident Commission,* 276 U. S. 467, 72 L. Ed. 656, 48 S. Ct. 346.

This court has applied the principle in the following cases: *Eclipse Mill Co. v. Department of Labor & Industries* and *Sultan R. & Timber Co. v. Department of Labor & Industries,* 141 Wash. 172, 251 Pac. 130; *Dewey Fish Co. v. Department of Labor & Industries,* 181 Wash. 95, 41 P. (2d) 1099. The first two of the decisions just cited were affirmed by the supreme court of the United States. *Sultan R. & Timber Co. v. Department of Labor & Industries,* 277 U. S. 135, 72 L. Ed. 820, 48 S. Ct. 505.

In none of the cases cited, however, do the facts bear any analogy to the facts in the case at bar. Indeed, the facts in all the cases thus far cited are so dissimilar as to render the decisions inapposite as authority — particularly in light of another line of decisions of the supreme court of the United States. That court has uniformly held that the "loading and

stowing of a ship's cargo" in navigable waters is a "maritime service," and that claims for injury incident thereto are exclusively within admiralty jurisdiction. *Atlantic Transport Co. v. Imbrovek,* 234 U. S. 52, 58 L. Ed. 1208, 34 S. Ct. 733; *Southern Pacific Co. v. Jensen,* 244 U. S. 205, 61 L. Ed. 1086, 37 S. Ct. 524; *Nogueira v. New York, N. H. & H. R. Co.,* 281. U. S. 128, 74 L. Ed. 754, 50 S. Ct. 303; *Employers' Liability Assurance Corp. v. Cook,* 281 U. S. 233, 74 L. Ed. 823, 50 S. Ct. 308. In the *Jensen* case, p. 217, the court said:

"The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

And again in the *Cook* case, p. 236:

"Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important. The unloading of a ship is not matter of purely local concern as we have often pointed out. Under the circumstances disclosed the State lacked power to prescribe the rights and liabilities of the parties growing out of the accident."

In *Comar v. Department of Labor & Industries,* 187 Wash. 99, 59 P. (2d) 1113, this court accepted and applied the doctrine of those cases, denying the claim of a workman who was injured on a barge in navigable waters while engaged in unloading cargo. There is no essential difference in the facts in that case and this. There, the transportation of the cargo was measured in miles, while here, it is measured in yards. But that is not a controlling factor. The accident occurred while Davis was working as a stevedore on a

vessel in navigable waters loading cargo. The fact that he may have been employed as a structural steel worker is immaterial. *Employers' Liability Assurance Corp. v. Cook, supra.* The loading of the steel on the barge was an integral part of the operation of dismantling the bridge. Under the decision of this court in the *Comar* case and the authorities there relied upon, this is the controlling factor—calling for the application of the principle laid down in those cases.

Appellant lays great stress on the case of *Dessen v. Department of Labor & Industries,* 190 Wash. 69, 66 P. (2d) 867, asserting that the holding there is inconsistent with the holding in the *Comar* case. The accident in that case occurred on navigable waters, but the question of maritime jurisdiction was not raised nor discussed, much less decided. The case has no authoritative value upon the question now raised. *Petley v. Tacoma,* 127 Wash. 459, 221 Pac. 579.

Judgment affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.